**Roger I. KNOX, Plaintiff,**

v.

**J. Leland ANDERSON, Defendant.**

**Civ. No. 1382.**

United States District Court
D. Hawaii.

April 18, 1958.

See also, 159 F.Supp. 795.

Smith, Wild, Beebe & Cades, J. Russell Cades, William B. Borthwick, Honolulu, Hawaii, for plaintiff.

Robertson, Castle & Anthony, J. Garner Anthony, William F. Quinn, Honolulu, Hawaii, Tannenbaum, Steinberg & Shearer, Bertram Fields, Beverly Hills, Cal., for defendant.

McLAUGHLIN, Chief Judge.

This cause came on regularly for trial before the court sitting without a jury, on the 30th day of January, 1957, J. Russell Cades, Esq., Milton Cades, Esq., and William B. Borthwick, Esq., appeared as counsel for the Plaintiff, and William F. Quinn, Esq., and Bertram Fields, Esq., appeared as counsel for the Defendant, and the court having heard the testimony and having examined the proofs offered by the respective parties, and the cause having been submitted to the court for decision, and the court being fully advised in the premises and having filed its Opinion herein now makes its findings of fact as follows:

### Findings of Fact

1. That Roger I. Knox, Plaintiff herein, was at the time this action was filed in the United States District Court for the Territory of Hawaii, and at all times hereinafter mentioned, a resident of Waikapu, County and Island of Maui, and a citizen of the Territory of Hawaii.

2. That J. Leland Anderson, Defendant herein, was at the time this action was filed in the United States District Court for the Territory of Hawaii, and at all times hereinafter mentioned, a resident of the County of Los Angeles and a citizen of the State of California.

3. That at all times hereinafter mentioned Defendant represented himself to Plaintiff to be an expert insurance and annuity counselor and a specialist in the so-called "bank loan plan" for the purchase of life insurance contracts; Defendant further represented to Plaintiff that he had an expert knowledge in the field of life insurance programs (particularly under the "bank loan plan"), in taxation incident to such insurance plans including income, inheritance and estate taxation, and that he possessed special skill and knowledge not possessed by insurance solicitors in the Territory of

Hawaii engaged generally in the business of selling life insurance contracts.

4. Plaintiff disclosed to Defendant when Defendant first contacted Plaintiff that he had no knowledge or skill in the matters set forth in paragraph 3 above; that Defendant did in fact have experience, skill and knowledge in the matters set forth in paragraph 3 above which was vastly superior to that possessed by Plaintiff.

5. That in August, 1952, when Plaintiff was in the process of altering his insurance program so as to reduce his total annual premiums, Frank M. Kreidler, acting as a "bird dog" for and on behalf of Defendant and under his direction called upon Plaintiff and represented to Plaintiff that Defendant could set up for him an integrated life insurance program under the so-called "bank loan plan" which would be suitable for and fit the needs of Plaintiff and his family. Kreidler strongly intimated that under such a plan one might be able to carry at least twice as much insurance as he was then carrying at no increase in cost; that the said "bird dog" obtained from Plaintiff for Defendant information concerning Plaintiff's income, existing insurance program, family status, family obligations and related matters; that Plaintiff made a full disclosure to said "bird dog" of all such information and affairs of which inquiry was made which information was communicated by said "bird dog" to Defendant.

6. That at all times hereinafter mentioned Defendant sought to obtain the complete trust and confidence of Plaintiff and to have Plaintiff rely upon Defendant's skill, experience and knowledge; that to obtain such trust, confidence and reliance Defendant presented and caused to be presented to Plaintiff testimonial letters and a letter of introduction from E. E. Bodge, a prominent member of the Territory's business world, and had one Frank M. Kreidler, an insurance agent working with and under the direction of Defendant, give to Plaintiff a build-up of Defendant which caused Plaintiff to eagerly anticipate a visit from Defendant; that as a result of such testimonials, introduction and build-up, Plaintiff in fact did repose complete trust and confidence in Defendant and rely upon Defendant's skill, experience and knowledge in those matters set out in paragraph 3 above and upon the representations set forth under paragraph 8 hereafter in purchasing the New York Life Insurance Company policies, making the conversions of his New England Mutual, John Hancock and Prudential policies and borrowing upon his insurance policies as set forth in paragraph 7 hereafter, which trust, confidence and reliance were known to Defendant at the times said policies were sold, said conversions made and said borrowing effectuated.

7. That on November 6, 1952, acting under the advice of Defendant, Plaintiff purchased Policy No. 22 400 740 on his life issued by New York Life Insurance Company in the face amount of $100,000 being a 10 Pay Life policy with an annual premium for 10 years of $7,265 and authorized Defendant to change Plaintiff's policy in the face amount of $5,000 with John Hancock from Endowment Age 60 to 25 Pay Life, Plaintiff's policy in the face amount of $10,000 with New England Mutual from Ordinary Life to 10 Pay Life and Plaintiff's policy in the face amount of $10,000 with Prudential from Modified Life 3 to 20 Pay Life said purchase and said conversions forming part of an integrated program of "bank financed insurance"; that on May 27, 1953, acting under the advice of Defendant that it would fit his program, Plaintiff added to and completed said program by purchasing Policy No. 22 534 715 on the life of his wife, Ellen W. Knox, issued by New York Life Insurance Company in the face amount of $50,000 being a 10 Pay Life policy having an annual premium for 10 years of $3,758; that at the time these purchases were made Plaintiff's net worth was not in excess of $25,000 and he had a salary of $8,100 per year and investment income of not in

excess of $1,500 per year thus placing him in the 26% tax bracket; that Plaintiff had expectations of being raised to assistant manager of his plantation at $12,000 per year; all of which facts were known to Defendant; that the annual premiums on the New York Life Insurance Company policies and the policies comprising Plaintiff's original insurance program prior to the purchase of the New York Life Insurance Company policies were to be paid from the proceeds of a gradually increasing bank loan upon the security of Plaintiff's insurance policies and Plaintiff was only to pay interest on such loan; that the first annual premiums on the New York Life Insurance Company policies and the conversion costs for the alterations in the forms of the New England Mutual, John Hancock and Prudential policies were paid from the proceeds of loans made upon Plaintiff's insurance policies.

8. (a) That Plaintiff was induced to buy the integrated program of "bank financed insurance" and to purchase the New York Life Insurance Company policies, to make the conversions of the New England Mutual, John Hancock and Prudential policies and to borrow the money upon his insurance policies as set forth in paragraph 7 above in reliance upon the representation to Plaintiff by Defendant that the program was within his financial means, was a suitable program for Plaintiff and his family and fitted their needs because by entering into said insurance program, Plaintiff would greatly increase his and his wife's life insurance coverage at all times during the term of the program at a cost to Plaintiff which was not substantially in excess, if at all, of the cost of the premiums then being paid by Plaintiff under his existing life insurance contracts; that this greatly increased coverage at approximately the same annual cost as the old program would be accomplished by a combination of the following:

1) By a saving in federal income taxes because the interest payable to the bank under the proposed "bank loan plan" would be a deductible expense for tax purposes;

2) By reason of the fact that Plaintiff's annual cash outlay during the early years under the new program would be less than the annual gross amount of premiums due under his old program, which difference could be invested and the income from such investment be available to reduce the annual cash outlay of the new program; and

3) By reason of the fact that the cash values of, and the dividends on the new insurance program would build up and thereby would further reduce the actual annual cost of the new insurance program and could be borrowed against, if necessary, to reduce actual annual cash outlay due under said new program so as to be less than the annual gross amount of premiums due under the superseded program;

that this representation of suitability was known or ought to have been known to Defendant to be false and fraudulent and was made by Defendant to Plaintiff with the intent that he rely upon it in buying said integrated program of "bank financed insurance", and had Plaintiff known that it was false he would not have purchased said integrated program.

(b) That certain other material representations made by Defendant to Plaintiff with the intent that he rely upon them in buying said integrated program of "bank financed insurance", which representations were known or should have been known to Defendant to be false and fraudulent, and on which Plaintiff in fact did rely in purchasing said integrated program are:

1) That the submitted plan was tailored to Plaintiff's needs and was one which by reason of substantial tax savings through interest deductions Plaintiff could afford, Anderson being calculatingly indifferent to whether Plaintiff's actual tax bracket corresponded at least to

the minimum 40% tax bracket which would enable the plan to work successfully;

2) That by reason of the increase in value of the total life insurance policies to be in force after the new program had been consummated, Plaintiff during his life time, or his estate, or beneficiaries, would realize sums greatly in excess of the cost of the program and in excess of what would have been realized under the superseded program, regardless of how long the program continued in effect;

3) That Plaintiff could withdraw at any time from the integrated insurance program sold Plaintiff by Defendant, or reduce it in amount, without disclosing that such changes might result in losses to Plaintiff;

4) That by reason of the rapid and substantial building up of the cash values of, and dividends on, the life insurance policies to be in force after the new program had been placed in effect, Plaintiff would secure approximately $600 a month retirement benefits from the purchase of such program;

5) That the complicated and involved schedule presented to Plaintiff by Defendant in September, 1953, purporting to represent the result and effect of the revised insurance program sold to Plaintiff by Defendant would be and was true and correct in every respect;

6) That the integrated program of "bank financed insurance" sold Plaintiff by Defendant was within his financial means and was a suitable insurance program for Plaintiff and his family and tailored to fit their needs;

7) That New York Life Insurance Company was a reputable and conservative firm, had investigated Plaintiff and would not have issued the two policies sold Plaintiff by Defendant if it had not believed that he could afford to carry them;

8) That Defendant would do or cause to be done all acts necessary or appropriate to the placing in full force and effect of the bank loan insurance program sold by Defendant to Plaintiff, provided that Plaintiff would cooperate, and that Defendant upon completion of all such acts would furnish to Plaintiff a true and correct schedule which would accurately reflect the result and effect of such bank loan insurance program, including the amount of the bank loan required to place said program in effect;

that had Plaintiff known said representations were false he would not have purchased said integrated program.

9. That Defendant failed to disclose to Plaintiff certain material information and facts which were known or should have been known to Defendant and which Defendant was under a duty to disclose to Plaintiff because of the relationship of trust and confidence which existed between Plaintiff and Defendant and the superior knowledge of Defendant; that such undisclosed information and facts are as follows:

(a) That the cost and expense for a loan broker employed by Defendant to put the "bank loan plan" into effect would be borne by Plaintiff and would be reflected in an increased interest rate charged Plaintiff by the bank making the loan;

(b) That the "bank loan plan" was the subject of considerable current controversy in the insurance industry, had been condemned by a large number of professional associations and societies within the insurance industry; that the indiscriminate use of the plan for overselling to persons in low tax brackets had been severely criticized and condemned by the New York Life Insurance Company for which Defendant was an agent; and that such validity as it might have in a particular case could be impaired or wholly destroyed by an interruption or reduction in the insured's earn-

ings, an increase in bank loan interests rates, an inability to secure a bank loan, changes in tax laws or a reduction or termination of expected dividends;

(c) That the revised schedule and a letter explanatory thereof submitted to Plaintiff by Defendant upon the completion of the bank loan, were not in all respects true and correct, but in fact misrepresented the result and effect of such bank loan insurance program;

(d) That with respect to the schedules referred to in paragraph 8(b), subparagraph (5) hereof, Defendant failed and neglected to inform Plaintiff:

(1) That the cash value of each policy shown in each schedule was not recoverable or available until the anniversary date of each such policy in the year following the year in which the cash value thereof is shown in the schedules.

(2) That the cash values of the Sun Life Insurance Company policies owned by Plaintiff could not in fact or law be left with the insurance company to accumulate at compound interest and thereby build up values as shown on said schedules.

(3) That although each schedule showed the tax advantage of the bank loan plan through a deduction of interest, there were offsetting tax disadvantages arising from the earnings of interest each year, or that taxes would be payable upon the voluntary termination of the program for any reason whatsoever.

(e) That upon the initiation of the bank loan program, the death benefits payable upon the death of Plaintiff under the policies owned by him prior to November, 1952, would be substantially reduced by the elimination of a family income rider attached to the New England Mutual Life policy and borrowing to pay the costs of conversion of the old policies to limited payment life policies as set out in paragraph 7 hereof;

(f) That upon the initiation of the bank loan program the cash values of Plaintiff's insurance policies would be substantially reduced and it would take fourteen (14) years of continuous operation of the bank loan program sold to Plaintiff by Defendant to produce cash values equivalent to the cash values that would be produced by the continuance of Plaintiff's old program without change;

(g) That for the first ten (10) years of the bank loan program sold to Plaintiff by Defendant the amount of additional benefits on the death of the Plaintiff provided by the bank loan program decreases sharply each year, and from that period on exceeds the accumulated additional cash outlay to provide said benefits by not more than an insignificant amount;

(h) That the bank loan program prepared by Defendant for Plaintiff involved the risks referred to in subparagraph (b) above, and that the effect of a change of bank interest rates, tax laws, or dividends on Plaintiff's insurance policies might result in the impairment of, or complete loss of, Plaintiff's program and for such program to be suitable for Plaintiff, Plaintiff must be willing to assume such risks;

(i) That he, Defendant, disclaimed any and all responsibility for the actions of the bank loan correspondent whom Defendant selected to assist in the placing of the bank loan and to whom he, Defendant, turned over Plaintiff's policies, funds and signed authorizations secured by Defendant from Plaintiff for the purpose of putting the bank loan insurance program into effect.

10. That Defendant made the false and fraudulent representations set forth under paragraph 8 above and failed to disclose the facts set forth in paragraph

9 above with the intent that Plaintiff, in reliance upon such misrepresentations and in ignorance of the facts set forth under paragraph 9 above, purchase the integrated program of "bank financed insurance" proposed by Defendant; that Plaintiff did in fact rely upon such misrepresentations and purchased said integrated program; that Plaintiff would not have purchased said integrated program had he known the representations set forth under paragraph 8 above to be false, nor would he have purchased said integrated program had he known the facts set forth under paragraph 9 above which Defendant failed to disclose to him.

11. That when Plaintiff purchased said integrated program of "bank financed insurance" Defendant knew that he did not understand said program and did not intend that he understand same and Plaintiff did not make an independent decision thereon but relied completely upon Defendant; that in order to prevent Plaintiff from understanding said program so that he could make an independent decision Defendant frequently avoided issues and ignored vital questions meeting them with half-truth answers or answers susceptible to more than one interpretation; that Defendant exacted a promise from Plaintiff not to show to other insurance agents the schedules prepared by Defendant illustrating· said program thereby cutting Plaintiff off from the best sources of information and advice concerning the nature and advisability of such a program.

12. That at the time Plaintiff rescinded and withdrew from said "bank loan program" and cancelled said New York Life Insurance Company policies as set out in paragraph 13 hereof it would have been possible for Plaintiff to cancel said policies on a non-contractual basis with a substantial saving in expense if the Defendant would so agree; that New York Life Insurance Company contacted Defendant concerning this matter and Defendant refused to cooperate so as to permit Plaintiff to cancel said policies on a non-contractual basis.

13. That in October, 1953, Plaintiff learned that the representations set forth in paragraph 8 hereof were false and fraudulent and proceeded immediately to rescind, cancel and withdraw from said "bank loan program" so as to minimize his losses resulting from Defendant's fraud and did so minimize said losses by cancelling the New York Life Insurance Company policies and paying off the loan with Plaza Bank of Commerce upon his insurance policies; that Plaintiff's actual monetary damage resulting from the purchase of said integrated program of "bank financed insurance" was the sum of $13,309.98.

14. That Plaintiff suffered grievous mental anguish and great distress of body and mind resulting from Defendant's fraud and was damaged thereby in the sum of $2,500.

15. That at all times hereinbefore mentioned Defendant acted wilfully, wantonly and maliciously and with a reckless disregard to and an entire· want of care for the rights of Plaintiff and with a conscious indifference to the consequences to the Plaintiff which might and did result from Defendant's fraud; that exemplary and punitive damages should be awarded against Defendant in the sum of $10,000.

From the foregoing facts the Court concludes:

## Conclusions of Law

1. That because of the relationship of trust and confidence which existed between Plaintiff and Defendant and also the superior knowledge possessed by Defendant, Plaintiff had a right to rely upon Defendant's representations of fact and opinion and Defendant was under a duty to make a full and fair disclosure to Plaintiff of those facts set forth in paragraph 9, subparagraphs (a) through (i) of the above Findings of Fact, and Defendant's failure to disclose fully and fairly said facts to Plaintiff and Defendant's misrepresentations of fact set forth under paragraph 8 of the above Findings of Fact constituted a fraud on the Plaintiff;

**344**

2. That Plaintiff is entitled to judgment against Defendant in the sum of $13,309.98, together with interest thereon at the rate of six per cent (6%) per annum from May 27, 1953, the date on which the last increment to the "bank loan plan" was sold to Plaintiff by Defendant to the date of entry of this judgment;

3. That Plaintiff is entitled to judgment against Defendant in the sum of $2,500 as and for damages for grievous mental anguish and great distress of body and mind resulting from Defendant's fraud;

4. That Plaintiff is entitled to judgment against Defendant in the sum of $10,000 as and for exemplary and punitive damages; and

5. That Plaintiff is entitled to judgment against Defendant for his costs and disbursements incurred or expended herein.

Let judgment be entered accordingly.